IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARY O'CONNOR and<br>TIMOTHY CONNOLLY,<br><br>               Plaintiffs,<br><br>      v.<br><br>LOCAL 881 UNITED FOOD AND<br>COMMERCIAL WORKERS and<br>LOCAL 1546 UNITED FOOD AND<br>COMMERCIAL WORKERS UNION,<br>AFL-CIO, CLC,<br><br>               Defendants. | No. 04 C 5636 |

## **MEMORANDUM OPINION AND ORDER**

Plaintiffs Mary O'Connor and Timothy Connolly are full-
time employees of Treasure Island Foods, Inc., a grocery store
chain. As of 2004, O'Connor was the head bookkeeper at the
Treasure Island located on Broadway in Chicago, Illinois. As of
2004, Connolly was the Deli Manager at the Treasure Island
located on Wells Street in Chicago. Both had previously worked
at other locations as well. Named as defendants are two locals
of the United Food and Commercial Workers Union ("UFCW"), both of

which were or are the collective bargaining representative for Treasure Island employees at particular stores. Both plaintiffs were members of the UFCW. As of 2004, defendant Local 881 represented workers at the Broadway and Wells Street stores, as well as some other stores in the Chicago area. Defendant Local 1546 represented employees at the Treasure Island located in Wilmette, Illinois, a Chicago suburb. O'Connor had previously worked at the Wilmette store, but apparently not as of 2004.[1] Plaintiffs contend that defendants breached their duty of fair representation.

Defendants have moved to dismiss the Complaint, raising two grounds for dismissal. Defendants contend that plaintiffs are actually alleging a violation of § 8 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158, which defendants contend is within the exclusive jurisdiction of the National Labor Relations Board ("NLRB"). Alternatively, if the case is not dismissed on this jurisdictional ground, defendants contend that a breach of the fair duty of representation has not been adequately alleged.

On a Rule 12(b)(6) motion to dismiss, plaintiffs' well-pleaded allegations of fact are taken as true and all

---

[1]The Complaint alleges plaintiffs' "current" places of employment as of the August 2004 filing of their Complaint. It is being assumed that both plaintiffs were at their "current" places of employment throughout 2004.

reasonable inferences are drawn in plaintiffs' favor.

Leatherman v. Tarrant County Narcotics Intelligence &

Coordination Unit, 507 U.S. 163, 164 (1993); Dixon v. Page,

291 F.3d 485, 486 (7th Cir. 2002); Stachon v. United Consumers

Club, Inc., 229 F.3d 673, 675 (7th Cir. 2000). A complaint need

not set forth all relevant facts or recite the law; all that is

required is a short and plain statement showing that the party is

entitled to relief. Fed. R. Civ. P. 8(a)(2); Boim v. Quranic

Literacy Institute, 291 F.3d 1000, 1008 (7th Cir. 2002);

Anderson v. Simon, 217 F.3d 472, 474 (7th Cir. 2000), cert.

denied, 531 U.S. 1073 (2001); Scott v. City of Chicago, 195 F.3d

950, 951 (7th Cir. 1999). Plaintiffs in a suit in federal court

need not plead facts; conclusions may be pleaded as long as the

defendants have at least minimal notice of the claim. Fed. R.

Civ. P. 8(a)(2); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512

(2002); Scott, 195 F.3d at 951; Albiero v. City of Kankakee,

122 F.3d 417, 419 (7th Cir. 1997); Jackson v. Marion County,

66 F.3d 151, 153-54 (7th Cir. 1995). Even if not required to

plead specific facts, plaintiffs can plead themselves out of

court by alleging facts showing there is no viable claim. See

Slaney v. The International Amateur Athletic Federation, 244 F.3d

580, 597 (7th Cir.), cert. denied, 534 U.S. 828 (2001); Kauthar

SDN BHD v. Sternberg, 149 F.3d 659, 669-70 n.14 (7th Cir. 1998),

cert. denied, 525 U.S. 1114 (1999); Jackson, 66 F.3d at 153-54.

Ordinarily, as long as they are consistent with the allegations of the complaint, a plaintiff may assert additional facts in his or her response to a motion to dismiss. Brokaw v. Mercer County, 235 F.3d 1000, 1006 (7th Cir. 2000); Forseth v. Village of Sussex, 199 F.3d 363, 368 (7th Cir. 2000); Albiero, 122 F.3d at 419; Gutierrez v. Peters, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997). Also, documents that are referred to in the complaint and that are central to a claim that is made may be considered to be part of the complaint even if not actually attached to the complaint. Rosenblum v. Travelbyus.com Ltd., 299 F.3d 657, 661 (7th Cir. 2002); Duferco Steel Inc. v. M/V Kalisti, 121 F.3d 321, 324 n.3 (7th Cir. 1997); Venture Associates Corp. v. Zenith Data Systems Corp., 987 F.2d 429, 431 (7th Cir. 1993). Where the document may properly be considered, the actual document will override inconsistent descriptions of the document alleged in the body of the complaint. See Rosenblum, 299 F.3d at 661 (quoting 5 Wright & Miller, Federal Practice & Procedure: Civil 2d § 1327 at 766 (1990)); In re Wade, 969 F.2d 241, 249 (7th Cir. 1992); Beam v. IPCO Corp., 838 F.2d 242, 244-45 (7th Cir. 1988).

In the complaint itself, it is unnecessary to specifically identify the legal basis for a claim as long as the facts alleged would support relief. Forseth, 199 F.3d at 368; Scott, 195 F.3d at 951; Albiero, 122 F.3d at 419; Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073, 1078

- 4 -

(7th Cir. 1992); Dodaro v. Village of Glendale Heights, 2003 WL
1720030 *8 (N.D. Ill. March 31, 2003). A plaintiff is not bound
by legal characterizations of the claims contained in the
complaint. Forseth, 199 F.3d at 368; Kirksey v. R.J. Reynolds
Tobacco Co., 168 F.3d 1039, 1041 (7th Cir. 1999). However, in
response to a motion to dismiss that raises the issue, the
plaintiff must identify a legal basis for a claim and make
adequate legal arguments in support of it. Kirksey, 168 F.3d at
1041-42; Stransky v. Cummins Engine Co., 51 F.3d 1329, 1335 (7th
Cir. 1995); Levin v. Childers, 101 F.3d 44, 46 (6th Cir. 1996);
Gilmore v. Southwestern Bell Mobile Systems, L.L.C., 224
F. Supp. 2d 1172, 1175 (N.D. Ill. 2002); Carpenter v. City
of Northlake, 948 F. Supp. 759, 765 (N.D. Ill. 1996).

To the extent defendants raise jurisdictional grounds for
dismissal, the motion to dismiss is pursuant to Rule 12(b)(1),
not Rule 12(b)(6). On the jurisdictional issue, the court may
consider allegations and proof outside the complaint and resolve
factual issues. See English v. Cowell, 10 F.3d 434, 437 (7th
Cir. 1993); Weidner Communications, Inc. v. H.R.H. Prince Bandar
Al Faisal, 859 F.2d 1302, 1310 n.11 (7th Cir. 1988); Crawford v.
United States, 796 F.2d 924, 928-29 (7th Cir. 1986); United
States ex rel. Bidani v. Lewis, 1998 WL 1820753 *3 (N.D. Ill.
Dec. 29, 1998). Any rational mode of inquiry will suffice; the
court has the discretion to hold a hearing to resolve factual

disputes if circumstances dictate, but also has the discretion to resolve disputes on the papers that are presented.  See Crawford, 796 F.2d at 928-29; Bidani, 1998 WL 1820753 at *3.

Plaintiffs' allegations are as follows.  O'Connor became a member of Local 881 in 1982 and Connolly became a member of Local 881 in 1988.  They remained members in good standing until May 2004.  It is alleged that both participated in Local 881's pension and health plans from the beginning of their Treasure Island careers until April 2004.  There is no allegation that either plaintiff was ever a member of Local 1546.  It is alleged that O'Connor worked at the Wilmette store at one time, but there is no allegation or indication that she worked at the Wilmette store during 2004.

Local 881 had a collective bargaining agreement with Treasure Island that ran from July 24, 2001 through March 7, 2004 and which was extended one additional week to March 14, 2004 (the "881 CBA").  The 881 CBA covered various stores including the two Chicago stores at which plaintiffs were employed in 2004.  All employees were in the bargaining unit except store managers. Local 1546 had a similar collective bargaining agreement that covered the Wilmette store from July 24, 2001 through March 7, 2004.

Under the 881 CBA, Treasure Island made contributions to Local 881 health and pension plans.  Treasure Island paid all

- 6 -

contributions and employees were not required to pay any portion. The pension plan did not include any type of 401(k) benefits.

In December 2003, Treasure Island began negotiations with both Locals regarding renewing the applicable bargaining agreements. In February 2004, citing economic hardship, Treasure Island proposed modifying the health and pension benefits provisions of both agreements. Treasure Island proposed using a private health plan instead of the Locals' health plans, limiting health benefits to employees who worked at least 32 hours per week, and requiring that covered employees pay a portion of the premiums. Treasure Island also proposed establishing 401(k) plans in place of the Locals' pension plans, but still making contributions that were equal to or greater than those required under the already existing bargaining agreements.[2]

In February 2004, O'Connor and other employees requested that Local 881 provide specific information regarding the status of negotiations with Treasure Island. No information was provided in response to the query. On March 7, 2004, the date the two bargaining agreements were originally scheduled to expire, both Locals held a membership meeting. No details about

---

[2]The actual allegation is "contributions equal to or greater than the amounts participating employees received from Defendants' pension plan." Compl. ¶ 18. Presumably, plaintiffs meant to compare proposed contributions to existing contributions, not proposed contributions to existing benefits.

the pending negotiations were provided and Local officials would not respond to questions about the status of negotiations.

Because of the failure to respond to queries, plaintiffs and some other employees believed both Locals were failing to act in the employees' best interests. Plaintiffs and other employees began circulating petitions to decertify both Locals as their exclusive bargaining representatives.

On Saturday March 13, 2004, O'Connor discovered a notice in the break room at the Broadway store. The notice stated that, the next day (Sunday), Local 881 would be holding a vote regarding ratification of a collective bargaining agreement. Most full-time employees did not work Saturdays and therefore would not have seen the notice prior to the Sunday vote. When a Local 881 representative was questioned about the lack of adequate notice, he responded that "hopefully someone would call" employees who were not working that Saturday. O'Connor contacted Connolly and some other full-time employees to inform them of the expected vote.

Plaintiffs allege that the notice that was given violated terms of the 881 CBA.

Both plaintiffs attended the March 14 meeting that began at 10:00 a.m. However, Local 881 Executive Vice President Maynard Jerome announced that no vote would occur, stating that the two Locals refused to concede any change in health or pension

- 8 -

benefits. He also stated that the two Locals had countered with a proposed 3.5% decrease in pay for 10 months "which Defendants claimed would level off the employees' health costs."[3] Compl. ¶ 25. At the meeting, Jerome acknowledged that Treasure Island was in financial trouble and made other statements that caused plaintiffs to believe that Treasure Island was planning to close stores. Jerome also indicated that a boycott of Treasure Island stores would begin the next day. Some Local members requested a vote on Treasure Island's proposal and the proposed boycott, but Jerome would not permit one. Many of those employees walked out in protest. A Local 881 meeting was also held at 6:00 p.m. that evening and the Local again refused to allow a vote on ratification or the proposed boycott. Without any new agreement having been reached, the 881 CBA expired.

Plaintiffs allege that the Locals were attempting to exert pressure on other companies that were contributors to the Locals' benefit plans by obstinately turning down Treasure Island's proposals. This was being done without regard to the effect on the economic livelihood of Treasure Island employees. On March 15, 2004, an informational boycott of Treasure Island was begun that negatively affected Treasure Island's income.

---

[3]Perhaps plaintiffs mean that the reduced pay represented a savings for Treasure Island that would be equal to the reduction in benefit costs represented by Treasure Island's proposed change in health and pension plans.

Plaintiffs and other employees had collected decertifi-

cation petition signatures from approximately 34% of the Locals'

Treasure Island members. On March 15, 2004, O'Connor submitted

the petitions to the NLRB. On March 29, 2004, O'Connor submitted

additional signatures bringing the total to 84% of the Treasure

Island union members.

Based on the submission of the petitions, on March 30,

2004, Treasure Island unilaterally withdrew its recognition of

the two Locals.[4] On April 1, 2004, Treasure Island unilaterally

instituted new health care coverage for its employees. Coverage

was provided through a private health insurer.

On April 7, 2004, the Locals sent a letter to all

Treasure Island members stating that Treasure Island had

illegally withdrawn from the health and pension benefit funds.

In an April 9 letter,[5] Local 881 "falsely" claimed that employees

had been coerced by management in order to picket in support of

Treasure Island. Local 881 also stated that Treasure Island had

engaged in unfair labor practices.

---

[4]In their answer to the motion to dismiss, plaintiffs
indicate the withdrawal of recognition was subsequently
retracted. This may have been following the NLRB's dismissal
of the decertification petitions.

[5]It is unclear if the letter is alleged to be addressed
to members or a local newspaper. In their answer brief,
plaintiffs refer to the April and May 2004 letters as
"published letters." Pl. Answer Br. at 12.

Although no formal withdrawal cards had been provided for members to sign, as of May 2004, both plaintiffs ceased paying member dues to Local 881.

In April or May 2004, the Locals filed unfair labor practices charges with the NLRB. On May 21, 2004, the Regional Director of the NLRB sustained the charges. The Regional Director also dismissed the decertification petitions. On June 24, 2004, the Regional Director filed a complaint charging Treasure Island with unfair labor practices. That case was set to be heard by an administrative law judge at a date subsequent to the filing of plaintiffs' court Complaint.

In a letter from Local 881's President dated May 26, 2004,[6] it was stated that Treasure Island used its "hand picked goon squads, including Mary O'Connor," in order to lie to employees and violate their rights. Plaintiffs also allege that Connolly "believed" this letter referred to his decertification efforts as well. The letter also referred to plaintiffs' efforts being coerced by Treasure Island, which plaintiffs allege was also a false accusation.

On June 4, 2004, Connolly filed unfair labor practices with the NLRB. The accusations against the Locals were "based on their misrepresentation of Treasure Island employees and false

---

[6]There is no allegation regarding who the recipients of the letter were.

statements concerning Plaintiffs' and other members' activities."

Compl. ¶ 42. In August 2004, the Regional Director dismissed the charges.

It is claimed that the aforementioned conduct of the Locals violated their duty of fair representation, in that:

> Defendants acted in an arbitrary or
> discriminatory manner and in bad faith, as
> indicated by, inter alia, their failure to
> properly advise Plaintiffs of contract
> negotiations with Treasure Island, failure
> to discuss the merits of Treasure Island's
> proposals concerning health and pension
> benefits, attempt to exclude Plaintiffs and
> other full-time employees from a critical
> meeting, refusal to allow Plaintiffs and other
> members to vote on ratifying the applicable
> Collective Bargaining Agreements, refusal to
> discuss or vote on the merits of boycotting
> Treasure Island, and issuance of false public
> statements about Plaintiffs' efforts to act
> in the best interest of Treasure Island
> employees.

Compl. ¶ 43.

Plaintiffs further allege that the Locals' conduct caused them to lose wages in that they had to spend time attempting to decertify the Locals. Plaintiffs also allege that the Locals' campaign in opposition to them caused them physical and emotional harm.

Before turning to the issues raised by the parties, there is a jurisdictional ground that requires dismissal of defendant Local 1546. Plaintiffs are not alleged to have been members of

- 12 -

Local 1546. While other employees involved in the
decertification campaign may have been Local 1546 members,
plaintiffs were not. Therefore, plaintiffs have no standing to
bring this action against Local 1546. The claim against Local
1546 will be dismissed from this action for lack of subject
matter jurisdiction.

The remaining jurisdictional question is whether the
claim against Local 881 actually alleges an unfair labor practice
in violation of § 8 of the NLRA which would fall within the
exclusive jurisdiction of the NLRB. Defendant overstates a
holding of Marquez v. Screen Actors Guild, Inc., 525 U.S. 33,
49-52 (1998). The Supreme Court did not hold that any allegation
of a violation of § 7 or § 8 of the NLRA falls within the
exclusive jurisdiction of the NLRB. Instead, the Supreme Court
held that alleging only a violation of § 7 or § 8 would
initially[7] fall within the NLRB's exclusive jurisdiction and
outside the jurisdiction of the federal courts. However, if a
union member also adequately alleges a related breach of the duty
of fair representation by the union, the claim may be properly
filed initially in federal court and the court may resolve issues
as to the violation of § 7 or § 8 if necessary and collateral to
the duty of fair representation claim. See id.; Almquist v.

_____

[7]There would still be federal court jurisdiction over an
appropriate appeal from the NLRB's decision.

- 13 -

Local 17-U of United Steelworkers of America, 2001 WL 1136141 *1
(N.D. Ill. Sept. 21, 2001). Therefore, in order to resolve this
jurisdictional issue, it should first be considered whether
plaintiffs have adequately alleged that Local 881 violated its
duty of fair representation. As is discussed below, plaintiffs
allege breaches of the duty of fair representation, but their
claims fail due to there being no sufficient allegation of
injury. Since a breach of the duty itself is alleged, the claim
against Local 881 will not be dismissed on jurisdictional
grounds, but will instead be reviewed for sufficiency of the
claim.

In order to violate its duty of fair representation,
Local 881's conduct toward plaintiffs, who were Local members,
must have been "arbitrary, discriminatory, or in bad faith."
Marquez, 525 U.S. at 44. In other words, Local 881 must have
violated its duty "to serve the interests of all members without
hostility or discrimination toward any, to exercise its
discretion with complete good faith and honesty, and to avoid
arbitrary conduct." Id. (quoting Vaca v. Sipes, 386 U.S. 171,
177 (1967)). The primary jurisdiction of the NLRB cannot be
avoided by a "ritualistic incantation" of the words "duty of fair
representation," "arbitrary," "discriminatory," or "bad faith."
Marquez, 525 U.S. at 49-51. If a violation of § 7 or § 8 of the
NLRA is alleged, a federal court should defer to the primary

- 14 -

jurisdiction of the NLRB unless facts are alleged that would
demonstrate arbitrary, discriminatory, or bad faith conduct
constituting a breach of the union's duty of fair representation.
Id. at 50-51. Plaintiffs do not dispute that they allege conduct
that could also be properly characterized as allegations of
violations of § 7 or § 8, but also contend that the allegations
primarily concern a breach of the duty of fair representation.

Plaintiffs' Complaint includes the magic words in both
the title of the claim and ¶ 43 of the Complaint. However, it is
not clear that the facts alleged actually constitute a breach of
the duty of fair representation. Also, the nature of the
purportedly discriminatory conduct is unclear. In their answer
brief to the motion to dismiss, plaintiffs indicate that the
nature of the discrimination is discrimination against union
members like themselves who were full-time employees. Plaintiffs
characterize their Complaint as alleging the following misconduct
which they contend constitutes arbitrary, discriminatory, or bad
faith conduct.

> (1) failing to "properly advise Plaintiffs of
> contract negotiations with Treasure Island,"
> (2) failing to "discuss the merits of Treasure
> Island's proposals concerning health and pension
> benefits," (3) attempting to "exclude Plaintiffs
> and other full-time employees from a critical
> meeting," (4) refusing to "allow Plaintiffs and
> other members to vote on ratifying the applicable
> Collective Bargaining Agreements," (5) refusing
> to "discuss or vote on the merits of boycotting
> Treasure Island," and (6) "issuing false public

statements about Plaintiffs' efforts to act in
the best interest of Treasure Island employees."

Pl. Answer Br. at 8 (quoting Compl. ¶ 43).

Items (1), (2), (4), and (5) all concern whether Local
881 acted arbitrarily or in bad faith because it acted
unilaterally instead of allowing its members to vote on the
actions and/or without informing its members as to what was
occurring. Local 881's conduct during contract negotiations will
only be found to be arbitrary "if, in light of the factual and
legal landscape at the time of the union's actions, the union's
behavior is so far outside a 'wide range of reasonableness.'"
Air Line Pilots Association, International v. O'Neill, 499 U.S.
65, 67 (1991) (quoting Ford Motor Co. v. Huffman, 345 U.S. 330,
338 (1953)).

There is no allegation in the Complaint that any
provision of the 881 CBA, union bylaws, or other union rules
required a vote on any of these matters or that Local 881 fully
inform membership as to these issues. In answer to the motion to
dismiss, however, plaintiffs allege that Local 881's "refusal to
allow voting on Treasure Island's proposals contravened [its]
internal policies and procedures." Pl. Answer Br. at 10.
Defendant contends that the UFCW International Constitution
provides that the Union has discretion as to whether or not to
submit an employer's proposal to a vote of the membership.

Because the contracts and rules applicable to Local 881 apparently are central to the allegations of the Complaint, provisions of the International Constitution could have been considered on the motion to dismiss even though not attached to the Complaint. Defendant has provided an affidavit of a UFCW attorney describing this alleged provision of the International Constitution, but no copy of the International Constitution has been provided. Therefore, on the Rule 12(b)(6) motion to dismiss, it must be taken as true that there are union rules that would have required that Local 881 allow membership to vote on Treasure Island's contract proposals.[8]

Where union rules or a collective bargaining agreement require that the employer's proposal be put to the vote of membership, the duty of fair representation requires that such a vote be permitted and that the proposal be fairly explained to membership unless the union has a sufficient reason for acting otherwise. See Farmer v. ARA Services, Inc., 660 F.2d 1096, 1103-04 (6th Cir. 1981); Deboles v. Trans World Airlines, Inc., 552 F.2d 1005, 1018 (3d Cir.), cert. denied, 434 U.S. 837 (1977); White v. White Rose Food, 237 F.3d 174, 183 (2d Cir. 2001) (dictum). On the other hand, if defendant's contention as to union rules is correct, it would not have been a breach of the

---

[8]It will also be assumed that a union rule required a membership vote as to the boycott.

- 17 -

duty of fair representation for Local 881 not to put Treasure Island's proposals to a membership vote. See White, 237 F.3d at 182-83; Cf. Evangelista v. Inlandboatmen's Union of Pacific, 777 F.2d 1390, 1397 (9th Cir. 1985) (no breach to fail to give notice of grievance that only involved an issue as to construction of the collective bargaining agreement).

According to the allegations of the Complaint, Local 881 had no permissible reason for failing to follow procedures requiring it to put Treasure Island's proposals or the boycott to the vote of membership. It is alleged that Local 881 was instead motivated by trying to influence grocery store employers other than Treasure Island.[9] Defendant does not contend that this would be a permissible motive for ignoring the requirement of putting the proposals to a vote of membership. On the facts taken to be true for purposes of the Rule 12(b)(6) motion to dismiss, the facts support that Local 881 acted in bad faith by refusing to keep membership adequately informed and by refusing to put Treasure Island's proposals and the boycott to a vote of membership.

It is also alleged that Local 881 acted discriminatorily when notifying membership regarding the March 14, 2004 meetings.

---

[9] It is unknown whether employees at the other grocery stores were also represented by Local 881 or were represented by other UFCW Locals.

It is adequately alleged that the notices violated union rules and were posted in a manner intended to make it less likely that full-time employees would attend the meetings. However, it is also alleged that no vote was taken at the March 14 meetings nor that anything substantive occurred at the meetings. Thus, to the extent full-time employees were excluded, the facts alleged do not support that they were harmed by the lack of notice. In any event, since it is alleged that the two plaintiffs in this case did receive notice and did attend the meeting, they would lack standing to complain about any deficient notice.

Plaintiffs also contend that being referred to as a goon and being described as being coerced into acting for Treasure Island constitute breaches of the duty of fair representation. While intentionally false statements that materially affect a decision to ratify a contract may constitute bad faith supporting a breach of the duty of fair representation claim, see Swatts v. United Steelworkers of America, 808 F.2d 1221, 1225 (7th Cir. 1986); O'Neill v. Airline Pilots Association, Internal, 939 F.2d 1199, 1202 (5th Cir. 1991) ("O'Neill II"); Deboles, 552 F.2d at 1019-20, the facts alleged in the present case do not support that the statements about plaintiffs materially affected any actions by membership. No vote on a contract ever occurred that could have been influenced. Also, hyperbolic statements made in the heat of contentious labor disputes generally will not support

- 19 -

a breach of the duty of fair representation claim.  See Swatts,
808 F.2d at 1225; O'Neill II, 939 F.2d at 1202.  The claim based
on the goon and siding with Treasure Island statements will be
dismissed.

Even accepting that the allegations regarding not having
a vote on the proposals or boycotts could constitute a breach of
Local 881's duty of fair representation, defendant argues that
the claim must be dismissed because there must also be a
sufficient causal nexus between the breach and harm to
plaintiffs.  See Williams v. Romano Brothers Beverage Co.,
939 F.2d 505, 508 & n.3 (7th Cir. 1991); Hunt v. United States,
1999 WL 33537152 *1 (N.D. Miss. May 12, 1999); Humphress v.
United Parcel Service, Inc., 31 F. Supp. 2d 1004, 1012 (W.D. Ky.
1997), aff'd by unpublished order, 172 F.3d 48 (6th Cir. 1998),
cert. denied, 526 U.S. 1099 (1999).  Any direct harm caused by
any unauthorized boycott affected Treasure Island.  To the extent
plaintiffs are still seeking injunctive relief, any such claim
would be dismissed as moot or for lack of standing.  There is no
indication that any negotiations currently exist regarding which
an injunction could be issued.  Moreover, plaintiffs resigned
from the UFCW in May 2004, since not currently members of the
UFCW, any injunction claim by them is moot or without proper
standing.

Plaintiffs contend they were harmed because, in response
to Local 881's failure to keep them informed and permit a vote,
they lost wages by taking time off work to press for
decertification. Plaintiffs also allege that they suffered
"physical and emotional harm" as a result of being accused of
being goons. That conduct does not constitute a breach of the
duty of fair representation. Therefore, that conduct cannot be a
basis for there being a sufficient nexus between a breach and
injury. It has also been held that any award for emotional
damages in a duty of fair representation case is limited to
situations of outrageous conduct, which plaintiffs do not allege.
See Cantrell v. International Brotherhood. of Electrical Workers,
Local 2021, 32 F.3d 465, 468-69 (10th Cir. 1994); Hooper v. Gold
Kist, Inc., 1998 WL 1742548 (N.D. Ala. May 8, 1998); Anspach v.
Tomkins Industries, Inc., 817 F. Supp. 1499, 1515-16 (D. Kan.
1993), aff'd sub nom. by unpublished order, Anspach v. Sheet
Metal Workers' International Association Local No. 2, 51 F.3d 285
(10th Cir. 1995).

The remaining question is whether the alleged lost wages
satisfy the causal nexus requirement for a breach of the duty of
fair representation claim. The relationship between the breach
of duty and injury must be direct. Deboles, 552 F.2d at 1018
(cited in Williams, 939 F.2d at 508 n.3); Wood v. International
Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of

- 21 -

America, Local 406, 807 F.2d 493, 502 (6th Cir. 1986), cert.
denied, 483 U.S. 1006 (1987) (quoting Deboles, supra); Humphress,
31 F. Supp. 2d at 1012. Here, it is alleged that Local 881's
misconduct caused plaintiffs to decide to attempt to oust the
Local which caused plaintiffs to take time off work which caused
plaintiffs to lose wages. That is not a direct nexus between
Local 881's misconduct and plaintiffs' lost wages. That is
unlike the usual situation where a union's failure to adequately
represent an employee during a grievance or other proceedings
results in the employee being discharged or suspended.
Plaintiffs' allegations do not adequately support a breach of the
duty of fair representation claim because the lost wages are too
tangentially related to the alleged misconduct of Local 881.

        For the foregoing reasons, the facts alleged by
plaintiffs do not support a claim of breach of the duty of fair
representation.

        IT IS THEREFORE ORDERED that defendants' motion to
dismiss [7] is granted. The claim against defendant Local 1546
is dismissed without prejudice for lack of subject matter
jurisdiction. The claim against defendant Local 881 is dismissed
with prejudice. The Clerk of the Court is directed to enter
judgment in favor of defendants and against plaintiffs dismissing
plaintiffs' cause of action (a) without prejudice for lack of
subject matter jurisdiction as against defendant Local 1546

United Food and Commercial Workers and (b) with prejudice as against defendant Local 881 United Food and Commercial Workers.

ENTER:

_William T. Hart_
UNITED STATES DISTRICT JUDGE

DATED:   FEBRUARY 8, 2005